NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 4, 2009
Decided March 12, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*


No. 07-3794

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 05 CR 41-1 |
| SHAMSIDEEN GORIOLA SOKOYA, *Defendant-Appellant*. | Blanche M. Manning, *Judge*. |

## ORDER

Shamsideen Sokoya entered a blind plea of guilty to possessing heroin with intent to distribute, *see* 21 U.S.C. § 841, after he was arrested and charged for delivering 350 grams of heroin to an FBI informant. The district court sentenced him to the bottom of the applicable guidelines range, 63 months' imprisonment, three months above the 60-month statutory minimum. *See* 18 U.S.C. § 841(b)(1)(B). Sokoya appeals a narrow sentencing issue, contending only that the court improperly refused to consider his education and employment history as mitigating factors under 18 U.S.C. § 3553(a). Specifically, Sokoya

argues that the court improperly rejected his argument that his education and employment history show that he is unlikely to reoffend. But Sokoya misconstrues the court's reasons, and there was no error. We affirm.

## I. Background

At the plea hearing, Sokoya tried to minimize his culpability in the offense. He emphasized that he was pleading guilty only because he could not locate the witnesses he needed for an entrapment defense and therefore did not believe he could win at trial. He explained that he had met the informant through a friend and that the informant repeatedly asked him for help in obtaining drugs from someone named Gafar, whom Sokoya knew, but the informant did not. Sokoya said that he agreed after the informant wore down his resistance. He told the district court that Gafar was his only source for the heroin and he obtained the drugs as a favor to the informant without expecting to be paid.

At the sentencing hearing, the government presented evidence that Sokoya had lied at his plea hearing, and therefore should not get credit for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, or the safety valve, *see* U.S.S.G. § 5C1.2. The government introduced excerpts of recorded conversations between Sokoya and the informant, and an FBI agent testified to explain the parts that suggested Sokoya played a greater role in the offense than he had admitted. The agent pointed out statements in which Sokoya alluded to having multiple sources for the heroin and argued over the quantity, price, and his compensation—all contrary to his claim that he was not familiar with the drug trade and did not expect to be paid. Sokoya testified as well and continued to deny any major involvement with drugs, explaining that he acted as a go-between for the informant and Gafar only after repeated urging from the informant. He further stated that all references to money in the conversations concerned the price of a car he was going to sell to the informant.

The district court denied Sokoya credit for acceptance of responsibility and the safety valve, finding that he had lied during his proffer. In considering all of Sokoya's suggested reasons for leniency under § 3553(a), the district court rejected his argument that he deserved a below-guidelines sentence because his steady employment (often working more than 60 hours a week as a parking attendant) and education level (a college degree earned in his native Nigeria) made him statistically less likely to reoffend. The court reasoned that "these characteristics did not prevent him from committing the instant offense" and therefore had "no reason to conclude that these same characteristics will prevent Sokoya from committing additional offenses." The court did, however, consider Sokoya's steady work history and education as evidence of Sokoya's good character and noted his efforts at

rehabilitating himself in prison, but concluded that the seriousness of the offense weighed against a below-guidelines sentence.

## II. Analysis

Sokoya contends that the district court misapplied the § 3553(a) factors when it rejected his argument that he had a low risk of recidivism. We review sentences first for procedural compliance and then for substantive reasonableness. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). We review the procedural component of a sentence under a non-deferential standard of review. *United States v. Campos*, 541 F.3d 735, 749 (7th Cir. 2008). At sentencing a district court must comment enough on the defendant's nonfrivolous arguments so that someone familiar with the case would understand why the court rejected the argument. *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007).

Sokoya's argument boils down to this:
> 1. The district court did not believe that his education and employment history meant he had a lower risk of recidivism because these factors did not prevent him from committing this offense.
> 2. Every offender will have committed the offense despite his or her education and employment history.
> 3. The district court will never find that an offender has a low risk of recidivism, thus violating § 3553(a), which instructs courts to consider the likelihood of recidivism at sentencing. *See* 18 U.S.C. § 3553(a)(2)(C).

Sokoya then generalizes from the factors of education and employment to every pre-offense characteristic and asserts that the court will never use any pre-offense characteristics to mitigate a sentence because the offender will always have committed the crime despite a particular characteristic.

Sokoya is mistaken when he concludes that the district court did not consider his education and employment as mitigating factors. The district court considered them evidence of Sokoya's good character, noting that Sokoya's "education, employment, and reputation among family members attest to his good character." Sokoya focuses instead on the court's disagreement that he presents a low risk of recidivism. Sokoya pinpoints the following language: "[Sokoya's education, employment, and reputation] did not prevent him from committing the instant offense. The court therefore has no reason to conclude that these same characteristics will prevent Sokoya from committing additional offenses." But Sokoya errs in equating the court's skepticism that *he* was unlikely to reoffend with a notion that *no one* would be unlikely to reoffend. At both the plea hearing and the sentencing hearing, the court had heard Sokoya minimize his culpability. Without a clear acceptance of

responsibility by Sokoya, it is understandable why the court rejected his argument that he was unlikely to repeat past mistakes.

Sokoya crafts his argument based on *United States v. Schroeder*, 536 F.3d 746 (7th Cir. 2008), in which we vacated the district court's rejection of the defendant's argument for a lower sentence based on extraordinary family circumstances. *Id.* at 755-56. The district court had decided that family circumstances did not constitute a valid basis for imposing a lower sentence because the defendant's criminal acts caused his difficult family situation. *Id.* at 751. But in extraordinary cases, family circumstances can, we noted, constitute a legitimate basis for imposing a below-guidelines sentence, regardless of the defendant's role in causing the hardship. *Id.* We concluded that the defendant's argument was not frivolous and that the district court erred in not examining the hardship despite § 3553(a)'s mandate to consider the individual defendant's characteristics. *Id.* The district court could have disagreed that the defendant's family situation was extraordinary or could have given it little weight, but it must give adequate reasons for its decision. *Id.*

Any similarities to *Schroeder* are superficial. In *Schroeder*, we vacated the defendant's sentence because the district court "brushed . . . aside" the defendant's nonfrivolous argument about hardship to his family. *Schroeder*, 536 F.3d at 756. Here, by contrast, the district court considered Sokoya's argument that he was unlikely to reoffend and gave a rational reason for rejecting it. Sokoya gave no reason why he was unlikely to offend again beyond the mere fact that he was educated and employed. Sokoya never adequately explained why he committed the first offense—the district court rejected his story that he was not familiar with the drug trade and that he assisted the informant only out of sympathy. Without an adequate explanation about why Sokoya committed the first offense notwithstanding his education and employment, the district court rationally concluded that it had no reason to believe his education and employment would prevent future crimes. Thus, there was no procedural error.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Sokoya's sentence.